**UNITED STATES of America**

v.

**William R. GRAVATT, Appellant.**

**No. 88–3437.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1989.

Decided Feb. 23, 1989.
Rehearing Denied April 21, 1989.

Paul J. Brysh, Asst. U.S. Atty. (argued), Pittsburgh, Pa., for appellee.

Vincent C. Murovich (argued), Pittsburgh, Pa., for appellant.

Before STAPLETON and MANSMANN, Circuit Judges, and HUYETT, District Judge.*

## OPINION OF THE COURT

HUYETT, District Judge.

Defendant-appellant William R. Gravatt appeals from a judgment of conviction for four counts of tax evasion, entered following a jury trial before the United States District Court for the Western District of Pennsylvania, at which the appellant was not represented by counsel. The important issue raised by this appeal is whether the district court conducted an appropriate inquiry into the appellant's financial ability to retain private counsel before denying his request for a court appointed attorney [1].

---

* Honorable Daniel H. Huyett, 3rd, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Because we determine that the appellant is entitled to a new trial, we need not reach the other issues raised in this appeal.

We hold that it did not. Accordingly, we reverse the conviction and remand for further proceedings.

## I.

Gravatt was indicted on January 14, 1987 under a four count indictment charging him with evading income taxes for the calendar years 1980 through 1983, in violation of 26 U.S.C. § 7201. On August 17, 1987, appellant made his initial appearance, without counsel, before a United States Magistrate. A transcript of the initial appearance was not prepared, but the district court's docket sheet records that a waiver of the appellant's right to counsel was signed on his behalf by the magistrate. At his August 24, 1987 arraignment, Gravatt again appeared without counsel. He refused to enter a plea, so a plea of not guilty was entered for him by the magistrate.

Among the subsequent flurry of *pro se* filings by the appellant was a "Petition for Leave to Proceed In Forma Pauperis," filed on September 9, 1987, and denied by the court the next day. Gravatt asserted that he required "legal or court assistance" to defend himself against the indictment. In support of this request, Gravatt supplied certain information about his financial status. He stated that he was unemployed, that he received approximately $600 in monthly Social Security benefits, and that he did not own automobiles, real property, stocks or interest in any corporation, insurance annuities, or savings or checking accounts.

■ On September 16, 1987, Gravatt renewed his request for legal representation in a "Petition for Court Appointed Counsel," which was referred to a U.S. Magistrate. The magistrate's clerk mailed Gravatt a letter requesting that he complete and return an enclosed copy of the standard form financial affidavit (CJA 23), "[i]n order to ascertain whether or not you qualify for appointment of counsel." Gravatt replied by letter, stating that he would not complete the CJA 23 because the affidavit incorrectly described the offense charged [2], and because disclosure of the requested income information would violate his Fifth Amendment privilege against self-incrimination. He offered to provide this information if he were granted "immunity for making statements regarding income." Gravatt did, however, again volunteer the information he had previously provided concerning his financial situation, adding that he had "15 Federal Reserve Notes" on his person. On October 6, 1987, the court denied defendant's petition, for the stated reason that Gravatt had "refused to complete the Financial Affidavit (CJA 23)." [3]

On January 22, 1988, during a pretrial hearing, Gravatt again argued that the government had incorrectly identified the offense for which he was charged. The court stood by its previous ruling on this matter, and the following colloquy ensued:

DEFENDANT: My rights, what about my rights? You ain't protecting my rights at all. I asked for a court appointed attorney because I couldn't find one. I don't have no attorney; here I'm standing in a criminal case.

THE COURT: Mr. Gravatt, you refused to file the necessary affidavit.

DEFENDANT: Because it was a mistake on it.

THE COURT: You refused to file the necessary affidavit requesting—

---

2. The affidavit described 26 U.S.C. § 7201 as "failure to make an income tax return." Appellant strenuously maintained in his response to the magistrate's clerk, at the pretrial hearing, and at trial that this language described 26 U.S.C. § 7203, not § 7201, and that he would therefore be committing perjury if he signed the CJA 23.

Gravatt's position on this issue is hypertechnical and without merit. The completion of a financial affidavit by a criminal defendant does not constitute an acknowledgement as to the correctness of the affidavit's description of the offense charged. Assuming, however, that this *pro se* defendant made this objection in good faith, his concern might have been answered by an explanation by the court, or by a revision of the offending language.

3. Gravatt's interlocutory appeal of this order, filed under No. 87-3686, was dismissed by this court. The appellant also filed under No. 87-8062 a petition for a writ of prohibition, which this court denied.

DEFENDANT: I can't perjure myself because somebody in the court made a mistake.

THE COURT: There being nothing further to come before the Court at this time, we'll adjourn.

On May 16, 1988, the first day of trial, Gravatt remarked on the court's failure to appoint an attorney for him. The trial judge, who evidently believed that this court had affirmed the order denying counsel[4], told Gravatt that in order to qualify for court-appointed counsel, he had to complete the financial affidavit. The judge then cautioned Gravatt not to comment to the jury "about being up against the United States without a lawyer."

The jury returned guilty verdicts on all four counts of the indictment[5]. On July 1, 1988, the defendant was sentenced to a three year term of imprisonment and fined $10,000 under Count One. On the remaining counts, imposition of sentence was suspended and appellant was sentenced to concurrent five year terms of probation.

## II.

■ The issue before us is whether the district court properly denied appellant's request for counsel on the basis of his refusal to complete the CJA 23. Under the particular circumstances of this case, which include (1) Gravatt's colorable assertion that disclosure of the income information requested on the CJA 23 would violate his Fifth Amendment rights in the pending tax prosecution, (2) his voluntary provision of financial information which tended to show his eligibility for appointed counsel, and (3) the appellant's apparent willingness to provide the requested financial information under a grant of immunity, we find that the court erred in failing to conduct a further inquiry into the appellant's eligibility for appointed counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defence." If a criminal defendant cannot afford private counsel, the trial court must appoint counsel to represent him, absent a knowing and explicit waiver of the right to counsel. *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 340, 83 S.Ct. 792, 794, 9 L.Ed.2d 799 (1963).

The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, sets out the duties of the trial court regarding the appointment of counsel. In pertinent part, the Act provides that in every case in which a person entitled to representation appears without counsel,

> the United States magistrate or the court shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the person waives representation by counsel, the United States magistrate or the court, if satisfied *after appropriate inquiry* that the person is financially unable to obtain counsel, shall appoint counsel to represent him.

18 U.S.C. § 3006A(b) (emphasis added).

A defendant has the burden of establishing financial eligibility for appointed counsel. *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977); *United States v. Ellsworth,* 547 F.2d 1096, 1098 (9th Cir. 1976), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977). However, the defendant's burden does not relieve the district court of its responsibility, once on notice of the defendant's inability to retain private counsel, "to make further inquiry into the defendant's financial condition to ascertain whether he is entitled to have counsel appointed to represent him." *United States v. Martin–Trigona,* 684 F.2d 485, 490 (7th Cir.1982); *see also United States v. Wadsworth,* 830 F.2d 1500, 1504 (9th Cir.1987); *United States v. Moore,* 671

---

**4.** In Gravatt's two previous appeals to this court, we did not reach the merits of his denial of counsel claim. *See* Note 3, *supra.*

**5.** Gravatt's defense at trial consisted of a single "character witness" who testified that, to his knowledge, Gravatt paid "all legal taxes" and was well liked by his neighbors.

F.2d 139, 141 (5th Cir.1982), *cert. denied,* 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983).

 In many cases, the court's inquiry may properly be limited to review of financial information supplied on the standard form financial affidavit. *Anderson, supra,* 567 F.2d at 840. However, when, as here, a defendant asserts a colorable claim that disclosure to the government of a completed CJA 23 would be self-incriminating, the court may not adopt an unconditional requirement that the defendant complete the CJA 23 before his application for appointment of counsel will be considered. To do so may place the defendant in the constitutionally untenable position of having to choose between his Sixth Amendment right to counsel and his Fifth Amendment privilege against self-incrimination. *Id.,* 567 F.2d at 840–41; *United States v. Branker,* 418 F.2d 378, 380 (2nd Cir.1969).

The Fifth Circuit addressed this situation in *Moore, supra.* In *Moore,* the defendant in a tax prosecution refused, on Fifth Amendment grounds, to complete the CJA 23. Although the district court's cursory examination of the defendant's financial status and the information filed against the defendant provided much of the data needed to establish defendant's eligibility for appointed counsel, the trial court refused to appoint counsel because of defendant's refusal to complete the financial affidavit.

The Fifth Circuit reversed, holding that the "absolute requirement of the district court that the CJA Form 23 be filled out before the court will consider the appointment of counsel is in violation of the rights of the accused" under the Sixth Amendment and 18 U.S.C. § 3006A. 671 F.2d at 140. The court noted that the CJA 23 "is not a required statutory form," but is simply an administrative tool to assist the trial court in determining eligibility for appointed counsel. The Fifth Circuit concluded that the lower court abused its discretion in

adopting a "specific requirement ... that the particular form had to be filled out" and "failing to pursue further the matter of financial need for the appointment of counsel." 671 F.2d at 141. *See also Anderson, supra* (District court erred in failing to allow defendant in tax prosecution, who had refused on Fifth Amendment grounds to complete financial affidavit, to provide the required financial information for an *in camera* inspection).

A contrasting situation was presented in *United States v. Sarsoun,* 834 F.2d 1358 (7th Cir.1987), which also involved a defendant in a tax prosecution who refused, on Fifth Amendment grounds, to complete the CJA 23. The Seventh Circuit found that the denial of appointed counsel was warranted by the defendant's failure to respond to questions regarding his income despite repeated assurances from the trial court that the information would not be used against him, unless he committed perjury. 834 F.2d at 1362–63. The court also considered that the information available to the lower court "did not strongly indicate that Sarsoun qualified for appointment of counsel." 834 F.2d at 1362 and n. 8.[6] Thus, the court concluded that the trial court did not err "in not pursuing further the matter of Sarsoun's financial need." 834 F.2d at 1363.

Unlike the situation in *Sarsoun,* the record in this case reveals no efforts on the part of the district court to answer Gravatt's concern that disclosure of a completed CJA 23 would be self-incriminating. Gravatt, unlike Sarsoun, expressed a willingness to provide the required financial information upon a grant of immunity. Moreover, the financial information volunteered by Gravatt tended to support his eligibility for appointed counsel. Gravatt acknowledged monthly income of $600 in Social Security benefits, but denied having significant assets. He also stated that he

6. The defendant in *Sarsoun* reported in an *in forma pauperis* application that although he had no significant assets, he received a monthly salary of $2,040. In addition, the indictment charged the defendant with receiving gross annual income ranging from $26,459 to $45,128.

The court found that "[t]hese allegations, while not conclusive, indicated the need for current financial information before the court could decide whether Sarsoun qualified for appointed counsel." 834 F.2d at 1362, n. 8.

was unemployed and was the sole source of support for his wife and himself. Under these circumstances, we find that the district court's requirement that Gravatt complete the CJA 23, and its failure to examine further his qualifications for appointed counsel, did not fulfill the court's responsibility under § 3006A(b) to conduct an "appropriate inquiry" into appellant's financial ability to obtain counsel [7].

The government asserts that the gross annual income alleged in the indictment, ranging from $32,432.73 in 1980 to $50,922.83 in 1983, undermines appellant's position that he was financially qualified for appointed counsel. Further, the government argues that Gravatt's voluntary statements about his income "appear to be carefully worded to avoid representations as to pension income or a cash hoard." Appellee's Brief at 13. According to the government, these factors justify the court's failure to conduct a further inquiry into the appellant's eligibility for appointed counsel.

Although these allegations of substantial past income are not sufficient to establish Gravatt's present financial situation, they do point up the need for current financial information before the court may pass on the application for appointed counsel. *Sarsoun*, 834 F.2d at 1362, n. 8. Moreover, the court may, as part of its § 3006A(b) inquiry, resolve ambiguities in the defendant's representations about his present income. However, because the district court's unyielding requirement that Gravatt complete the CJA 23 improperly cut off examination of these matters, we are not prepared to rule on appellant's eligibility for appointed counsel.

### III.

■ A defendant's Fifth Amendment-based refusal to complete the CJA 23 puts the trial court in the difficult position of resolving the conflict between the constitutional rights of the defendant and the interest of the government in limiting appointment of counsel to financially qualified individuals. We believe that the district court may properly reconcile these competing concerns in either of two ways. First, following the approach prescribed in *Anderson, supra,* the court may afford the defendant the "opportunity to disclose the required financial information to the trial court for it to review in camera, ... [following which] the financial data should be sealed and not made available for the purpose of tax prosecution." 567 F.2d at 840; *see also Ellsworth, supra,* 547 F.2d at 1098.[8] Second, if the trial court deems an adversary hearing on defendant's request for appointment of counsel to be appropriate, the court may grant use immunity to the defendant's testimony at that hearing. *See Branker, supra,* 418 F.2d at 380; *Simmons v. United States,* 390 U.S. 377, 389–94, 88 S.Ct. 967, 973-76, 19 L.Ed.2d 1247 (1968)(Defendant's testimony at a pretrial suppression hearing may be excluded at trial)[9].

---

**7.** The history of 18 U.S.C. § 3006A supports the view that a district court should not restrict itself to a particular method of assessing a criminal defendant's eligibility for appointed counsel. Attorney General Robert F. Kennedy, in submitting the Criminal Justice Act to Congress in 1963, stated:

the requirement of an "appropriate inquiry" to determine the defendant's financial need is intended to assure that the court, by hearing, affidavit or other suitable investigation, will scrutinize all applications for representation. H.R.Rep. No. 864, 88th Cong., 1st Sess., *reprinted in* 1964 U.S.Code Cong. & Admin. News 2990, 2996.

**8.** The court in *Ellsworth* found that the district court did not impermissibly deny appointed counsel to a defendant in a tax prosecution who refused on Fifth Amendment grounds to complete the financial affidavit. However, in that case, the defendant was "given written assurance by an order of the court that information disclosed on the form could not be used for further tax prosecution." 547 F.2d at 1098.

**9.** In *Branker,* the Second Circuit found it improper for the trial court to admit against defendant at trial his testimony at an appointment of counsel hearing. Citing the use immunity afforded a defendant who testifies at a suppression hearing, *Simmons, supra,* the court stated:

We are of the view that the government should not be permitted to use as part of its direct case any testimony given by a defendant at a hearing where he is seeking *forma pauperis* relief or the assignment of counsel on the ground of his financial inability to ... secure counsel. The defendant should enjoy

Because selection of methods may involve consideration of a variety of factors best known to the district court, we will commit the choice to the sound discretion of that court. Whichever method is chosen, the defendant may be required to provide the necessary financial information under penalty of perjury. *See Sarsoun, supra,* 834 F.2d at 1363. Further, as was done by this court on this appeal, the appointment of counsel may be conditioned on the appellant's obligation to repay the government for his defense costs, should it later develop that he is financially able to do so. 18 U.S.C. § 3006A(c); *Martin–Trigona, supra,* 684 F.2d at 492, n. 9; *United States v. Allen,* 596 F.2d 227, 232 (7th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979).

## IV.

Under the circumstances of this case, the lower court's failure to conduct an appropriate inquiry before denying appellant's request for appointed counsel requires reversal of Gravatt's conviction. Recognizing that a fair trial in our adversary system of criminal justice cannot be assured if the defendant is unrepresented, *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963); *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932), the Supreme Court has held that the denial of the right to counsel is *per se* prejudicial,

*Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984), and that any waiver of this right must be "knowing and intelligent." *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972).

An individual who has the financial resources to obtain counsel does not have a right to a court-appointed attorney. It may be that in certain instances, a defendant's decision to proceed *pro se* despite his or her ability to retain private counsel may constitute a knowing and intelligent waiver of the right to counsel. *See United States v. Barcelon,* 833 F.2d 894, 899 n. 6 (10th Cir.1987). However, in this case, the district court's unconditional requirement that Gravatt complete the CJA 23 cut off any examination by the court of Gravatt's Fifth Amendment assertion or any meaningful inquiry into his eligibility for appointed counsel.

Had Gravatt's eligibility for court-appointed counsel been properly addressed, had court-appointed counsel been denied, and had Gravatt insisted on proceeding pro se, it would then have been necessary for the court to warn Gravatt of the perils of self-representation. *See Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)[10]. The court, however, did not reach this issue and we are not prepared to find on this record that Gravatt knowingly and intelligently waived his right to counsel. In the past, where the

---

his constitutional rights tᴒ counsel and to appeal and the means of supporting his assertion of these rights by his own testimony without running the risk that thereby he may be incriminating himself with respect to the charges pending against him.

418 F.2d at 380. Under the particular circumstances of that case, however, the admission of such testimony did not constitute reversible error.

We note that the Supreme Court has expressly reserved ruling on whether "the *Simmons* principle was appropriately extended to Sixth Amendment claims by the *Branker* holding." *United States v. Kahan,* 415 U.S. 239, 243, 94 S.Ct. 1179, 1181, 39 L.Ed.2d 297 (1974) (per curiam). Because the issue is not presented by this appeal, we also reserve for later the issue of whether, or under what circumstances, a criminal defendant's testimony at an appointment of counsel hearing may be admitted at trial.

10. In upholding a criminal defendant's right to proceed *pro se,* the court in *Faretta* stated that the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" 422 U.S. at 835, 95 S.Ct. at 2541, *quoting Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

In the context of joint representation of criminal codefendants, we have refused to find waiver of the right to effective assistance of counsel in the face of a silent record, and in the absence of a judicial warning to the defendants about the perils of joint counsel. *Government of the Virgin Islands v. Hernandez,* 476 F.2d 791, 793–94 (3d Cir.1973); *Government of the Virgin Islands v. John,* 447 F.2d 69, 74–75 (3d Cir.1971).

trial court has failed to discuss the hazards of self-representation with the defendant before trial, we have concluded that a post-trial inquiry into the waiver issue would provide insufficient assurance that there has been no Sixth Amendment violation. *Piankhy v. Cuyler*, 703 F.2d 728 (3d Cir. 1983); *United States v. Welty*, 674 F.2d 185 (3d Cir.1982). In accordance with these authorities and others,[11] a new trial will be required whether or not Gravatt is found to be entitled to court-appointed counsel under 18 U.S.C. § 3006A.

We reverse and remand to the district court for further proceedings consistent with this opinion.

---

**11.** *See Moore*, 671 F.2d at 141; *United States v. Harris*, 683 F.2d 322 (9th Cir.1982); *United States v. Aponte*, 591 F.2d 1247 (9th Cir.1978).

The court in *Moore* found that the defendant "was prejudiced in the prior trial by the mere fact that the district court refused to appoint counsel without making adequate inquiry into the need to appoint counsel, since the court improperly demanded that the defendant fill out a CJA Form 23 before the court would further consider the appointment of counsel." 671 F.2d at 141.

We agree that under the circumstances of *Moore* and of this case, the district court's unconditional requirement that the CJA 23 be completed warrants reversal. However, to the extent that *Moore* holds that an insistence on completion of the CJA 23 is *per se* prejudicial, we decline to follow that decision. There may be situations in which the trial court may properly require that a defendant complete the financial affidavit before it will consider a request for appointment of counsel. *Anderson, supra*, 567 F.2d at 840.