993 F.2d 1531
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Robert G. BEVERLY, Defendant, Appellant.
 No. 92-2478.
 United States Court of Appeals,
First Circuit.
 May 11, 1993.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND
 Robert G. Beverly on brief pro se.
 Lincoln C. Almond, United States Attorney, James A. Bruton, Attorney General, Robert E. Lindsay, Alan Hechtkopf and Scott A. Schumacher, Attorneys Tax Division, on brief for appellee.
 D.R.I.
 AFFIRMED.
 Before Torruella, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 The appellant, Robert G. Beverly, was convicted, after a jury-waived trial, of two counts of failure to file an income tax return, and three counts of income tax evasion. We affirm the conviction.
 
 
 2
 * Beverly's principal argument on appeal concerns the fact that he represented himself at trial. In his pre-trial appearances, Beverly twice stated that he wanted a lawyer and was unable to afford one. He even filed a motion seeking appointed counsel. However, a week after he filed the motion, Beverly withdrew it without explanation, and on the first day of trial he unequivocally stated his intention to go forward without a lawyer.
 
 
 3
 Beverly now argues that the district court "was under an obligation of the Constitution to appoint Assistance of Counsel regardless of the defendants [sic] financial status...." This is incorrect. The Criminal Justice Act (CJA) requires appointed counsel only for "any person financially unable to obtain adequate representation...." 18 U.S.C. § 3006A(a). Although the CJA requires the district court to conduct an "appropriate inquiry" into the financial status of a defendant who seeks appointed counsel, 18 U.S.C. § 3006A(b), the defendant bears the burden of proving financial inability. United States v. Harris, 707 F.2d 653, 660 (2d Cir. 1983) and cases cited therein.
 
 
 4
 Beverly appears to be arguing (1) that, had he not withdrawn his motion for appointed counsel, the court's "inquiry" would have consisted of scrutinizing a standard CJA application and affidavit disclosing Beverly's financial status, and (2) that such an inquiry would not have been "appropriate" because it would have required Beverly to surrender his Fifth Amendment right not to incriminate himself in order to obtain the protection of counsel due him under the Sixth Amendment.
 
 
 5
 Some courts have recognized a potential for conflict between a criminal defendant's Fifth Amendment right not to incriminate himself and his obligation under the CJA to demonstrate that he is unable to pay for a lawyer. See United States v. Gravatt, 868 F.2d 585, 589 (3d Cir. 1989); United States v. Moore, 671 F.2d 139, 140 (5th Cir. 1982); United States v. Anderson, 567 F.2d 839, 840-41 (8th Cir. 1977). However, even these courts have not allowed tax defendants to obtain free counsel regardless of financial need. Rather, they have required the defendants to bear their burden of proof, subject to either (1) in camera inspection of information about their finances, or (2) assurances that such information will not be used against them. See United States v. Gravatt, 868 F.2d at 590. See also United States v. Davis, 958 F.2d 47, 49 n.4 (4th Cir. 1992) (district court avoided Fifth Amendment challenge by examining defendant ex parte and sealing answers); United States v. Anderson, 567 F.2d at 840 (district court should have reviewed financial information in camera); United States v. Ellsworth, 547 F.2d 1096, 1098 (9th Cir. 1976) (affirming where district court assured defendant that financial information could not be used for further prosecution). But see United States v. Krzyske, 836 F.2d 1013, 1018-19 (6th Cir. 1988) (district court not required to hold in camera hearing where defendant asserted Fifth Amendment rights); United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980) (district court not required to grant immunity where conflict with Fifth Amendment is speculative and prospective only).
 
 
 6
 We do not have to decide here whether a district court must grant immunity or hold an in camera hearing when a criminal defendant asks for appointed counsel but raises a legitimate Fifth Amendment concern about providing the needed financial information, because Beverly-unlike the defendants in the cases cited above-did not even make a "colorable assertion" to the district court that public disclosure of his financial information would violate his Fifth Amendment rights. Cf. United States v. Gravatt, 868 F.2d at 588. Beverly did tell the court that he wanted a lawyer and could not afford one that would represent him "properly," but in his conversations with the district judge about the issue of representation he never asserted his Fifth Amendment rights or attempted to explain how his response to the standard CJA inquiries would compromise those rights. He filed a motion for appointed counsel but provided no financial information, and then withdrew the motion without comment, and certainly without suggesting that he had done so in order to preserve his right not to incriminate himself.[1]
 
 
 7
 In sum, Beverly never suggested, much less demonstrated, to the district court that there was any real tension between his rights under the Fifth Amendment and his obligations under the CJA, and hence never gave the district court an opportunity either to resolve such tension by allowing him to produce evidence of his financial status subject to in camera inspection or a grant of immunity, or to refuse to do so. His assertion on appeal that he was put to an impermissible "choice" between conflicting constitutional rights, therefore, is too speculative to merit relief. See United States v. Peister, 631 F.2d at 662.
 
 
 8
 Nor do we find any other suggestion in the record that Beverly's decision to forego counsel was less than "knowing and intelligent." Beverly argues that the district court should have followed a prescribed series of questions in order to ensure that the waiver was valid. See United States v. McDowell, 814 F.2d 245, 250, 251-52 (6th Cir. 1987). But this court does not require the district court to "issue a particular warning or make specific findings of fact before it allows a defendant to proceed pro se." United States v. Hafen, 726 F.2d 21, 25 (1st Cir. 1984). We have said that the district court can allow a criminal defendant to represent himself if all of the information available to the court indicates that the defendant (1) understands "the magnitude of the undertaking and the 'disadvantages of self-representation,' " (2) is aware "that there are technical rules governing the conduct of a trial, and that presenting a defense is not a simple matter of telling one's story," and (3) appreciates "the seriousness of the charge and of the penalties he may be exposed to before deciding to take a chance on his own skill." Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir. 1976).
 
 
 9
 Here, on the first day of trial, the district judge quite explicitly asked Beverly whether he understood that he had a right to a lawyer, and whether he chose nonetheless to "go ahead without one," and Beverly quite explicitly answered that he did. By that time, moreover, the court had, in one pre-trial hearing, described the charges to Beverly as "serious," explained the potential penalties, and commented on the "unique" nature of some of the motions that Beverly had filed, and had heard Beverly, in another pre-trial hearing, acknowledge that he was not an attorney and that he did not "know all the procedures that this Court needs me to perform." Although the process of review would be simplified if the district court would engage in a more extended colloquy and give a more specific warning than was done here, and if it would "provide[ ] a short statement of its reasons for finding a defendant's waiver of counsel to be knowing and intelligent," United States v. Hafen, 726 F.2d at 25, we cannot find, on the record before us, that the district court erred in allowing Beverly to represent himself at trial.
 
 II
 
 10
 Beverly's remaining arguments do not require extended discussion.
 
 
 11
 1. Beverly contends that the testimony of IRS agents concerning their interview with him in 1989 was inadmissible because Beverly had not been properly warned about his Fifth Amendment rights before the interview began. Beverly concedes that the agents advised him of his rights in "absolute accordance" with IRS procedures for so-called "noncustodial" interviews, but says that his interview was in fact "custodial" and therefore required the agents to give him full-blown Miranda warnings.
 
 
 12
 "In evaluating whether a suspect was in custody and thus entitled to Miranda warnings, we look to see, using objective standards, whether there was a manifestation of a significant deprivation of or restraint on the suspect's freedom of movement, taking into account such factors as 'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation.' " United States v. Lanni, 951 F.2d 440, 442 (1st Cir. 1991) (citations omitted). Beverly, who was represented by a lawyer during the IRS investigation, was interviewed at the lawyer's office, in the lawyer's presence, by two IRS agents. There is nothing in the record to suggest that the agents physically restrained Beverly or gave him reason to think he could not leave or terminate the interview. The questioning lasted, according to Beverly, only three hours, and we see no evidence that the questions were coercive in nature, or that the agents were overbearing in manner. In short, there are no indicia of a custodial interrogation, and Beverly's protests that he nevertheless felt intimidated will not avail him, because the test of custody is objective: "the only relevant inquiry [with respect to whether a person was in custody for Miranda purposes] is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).[2]
 
 
 13
 2. Beverly says that IRS and Justice Department procedures required the prosecutor in this case to obtain (a) a Special Agent's Report, (b) a Criminal Referral Letter, (c) a Prosecution Report, and (d) a signed Form 9131 before he went to the grand jury for an indictment. He claims that the prosecutor did not obtain these documents.
 
 
 14
 We may assume the truth of these premises because they do not support Beverly's conclusion: that the resulting indictment was flawed and that the trial court therefore lacked jurisdiction to convict. "[A]n IRS agent's violation of a regulation of this sort does not prevent prosecution and conviction of a defendant...." United States v. Michaud, 860 F.2d 495, 499 (1st Cir. 1988). The procedures Beverly describes were not required by statute or the Constitution, nor can Beverly reasonably contend that he relied on the procedures, or that their breach had any effect on his conduct. United States v. Caceres, 440 U.S. 741, 749-53 (1979). For similar reasons, we hold that even if the IRS violated the Privacy Act by failing to keep Beverly's Individual Master File up-to-date, the delinquency caused Beverly no prejudice at trial and does not affect the validity of his conviction.
 
 
 15
 3. The district court did not deprive Beverly of any discovery to which he was entitled. The government complied with the district court's uniform order for automatic discovery, and Beverly has not shown us that the prosecutor withheld anything which the order required him to disclose, or that he found and failed to disclose any exculpatory material. Beverly's discovery motions ranged well beyond the scope of Rule 16 and were properly denied. The prosecutor complied with the Jencks Act, 18 U.S.C. § 3500(a), by supplying witness statements and reports to Beverly on the morning of trial.
 
 
 16
 4. We see no merit in Beverly's contention that neither the Attorney General nor the Bureau of Prisons had statutory authority to take custody of him after his conviction. Beverly was convicted of five crimes, three committed before November 1, 1987, and two committed after that date. As to the first group, 18 U.S.C. § 4082(a) authorized the Attorney General to take custody, because the repeal of Section 4082(a) did not take effect until November 1, 1987. As to the latter group, 18 U.S.C. § 3621(a)-which replaced Section 4082(a) and applies to crimes committed after November 1, 1987-authorized the Bureau of Prisons to take custody.
 
 
 17
 Affirmed.
 
 
 
 [1]
 Beverly's statement to Pre-Trial Services that he was earning $4,000 a month, the fact that he was able to pay a lawyer to represent him during the IRS' investigation, and the evidence produced at trial that he owned two condominiums and a boat, and had earned more than $60,000 in 1985 and 1986, and more than $85,000 in 1987, all suggest, rather, that Beverly withdrew the motion because he had concluded that he would not be able to convince the court to give him a free lawyer. This evidence also suggests that, had the district court reviewed Beverly's financial status (either in camera or after a grant of immunity), it would nevertheless have concluded that he was not entitled to appointed counsel under the CJA
 
 
 [2]
 Nor do we see any evidence that the agents tricked Beverly into waiving his Miranda rights. Beverly says that the IRS agent who conducted the interview told him that he was investigating the possibility of criminal violations, and that appears to be exactly what the agent was doing