[NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS

 FOR THE FIRST CIRCUIT

 

No. 92-2478

 UNITED STATES,

 Appellee,

 v.

 ROBERT G. BEVERLY,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Francis J. Boyle, U.S. District Judge]
 

 

 Before

 Torruella, Cyr and Boudin,
 Circuit Judges.
 

 

 Robert G. Beverly on brief pro se.
 
 Lincoln C. Almond, United States Attorney, James A. Bruton,
 
Attorney General, Robert E. Lindsay, Alan Hechtkopf and Scott A.
 
Schumacher, Attorneys Tax Division, on brief for appellee.
 

 
 May 11, 1993
 

 Per Curiam. The appellant, Robert G. Beverly, was
 

convicted, after a jury-waived trial, of two counts of

failure to file an income tax return, and three counts of

income tax evasion. We affirm the conviction.

 I
 

 Beverly's principal argument on appeal concerns the fact

that he represented himself at trial. In his pre-trial

appearances, Beverly twice stated that he wanted a lawyer and

was unable to afford one. He even filed a motion seeking

appointed counsel. However, a week after he filed the

motion, Beverly withdrew it without explanation, and on the

first day of trial he unequivocally stated his intention to

go forward without a lawyer. 

 Beverly now argues that the district court "was under an

obligation of the Constitution to appoint Assistance of

Counsel regardless of the defendants [sic] financial status.

. . ." This is incorrect. The Criminal Justice Act (CJA)

requires appointed counsel only for "any person financially

unable to obtain adequate representation. . . ." 18 U.S.C. 

3006A(a). Although the CJA requires the district court to

conduct an "appropriate inquiry" into the financial status of

a defendant who seeks appointed counsel, 18 U.S.C. 

3006A(b), the defendant bears the burden of proving financial

inability. United States v. Harris, 707 F.2d 653, 660 (2d
 

Cir. 1983) and cases cited therein. 

 -2-

 Beverly appears to be arguing (1) that, had he not

withdrawn his motion for appointed counsel, the court's

"inquiry" would have consisted of scrutinizing a standard CJA

application and affidavit disclosing Beverly's financial

status, and (2) that such an inquiry would not have been

"appropriate" because it would have required Beverly to

surrender his Fifth Amendment right not to incriminate

himself in order to obtain the protection of counsel due him

under the Sixth Amendment. 

 Some courts have recognized a potential for conflict

between a criminal defendant's Fifth Amendment right not to

incriminate himself and his obligation under the CJA to

demonstrate that he is unable to pay for a lawyer. See
 

United States v. Gravatt, 868 F.2d 585, 589 (3d Cir. 1989);
 

United States v. Moore, 671 F.2d 139, 140 (5th Cir. 1982);
 

United States v. Anderson, 567 F.2d 839, 840-41 (8th Cir.
 

1977). However, even these courts have not allowed tax

defendants to obtain free counsel regardless of financial

need. Rather, they have required the defendants to bear

their burden of proof, subject to either (1) in camera
 

inspection of information about their finances, or (2)

assurances that such information will not be used against

them. See United States v. Gravatt, 868 F.2d at 590. See
 

also United States v. Davis, 958 F.2d 47, 49 n.4 (4th Cir.
 

1992) (district court avoided Fifth Amendment challenge by

 -3-

examining defendant ex parte and sealing answers); United
 

States v. Anderson, 567 F.2d at 840 (district court should
 

have reviewed financial information in camera); United States
 

v. Ellsworth, 547 F.2d 1096, 1098 (9th Cir. 1976) (affirming
 

where district court assured defendant that financial

information could not be used for further prosecution). But
 

see United States v. Krzyske, 836 F.2d 1013, 1018-19 (6th
 

Cir. 1988) (district court not required to hold in camera
 

hearing where defendant asserted Fifth Amendment rights);

United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980)
 

(district court not required to grant immunity where conflict

with Fifth Amendment is speculative and prospective only).

 We do not have to decide here whether a district court

must grant immunity or hold an in camera hearing when a
 

criminal defendant asks for appointed counsel but raises a

legitimate Fifth Amendment concern about providing the needed

financial information, because Beverly -- unlike the

defendants in the cases cited above -- did not even make a

"colorable assertion" to the district court that public

disclosure of his financial information would violate his

Fifth Amendment rights. Cf. United States v. Gravatt, 868
 

F.2d at 588. Beverly did tell the court that he wanted a

lawyer and could not afford one that would represent him

"properly," but in his conversations with the district judge

about the issue of representation he never asserted his Fifth

 -4-

Amendment rights or attempted to explain how his response to

the standard CJA inquiries would compromise those rights. He

filed a motion for appointed counsel but provided no

financial information, and then withdrew the motion without

comment, and certainly without suggesting that he had done so

in order to preserve his right not to incriminate himself.1

 In sum, Beverly never suggested, much less demonstrated,

to the district court that there was any real tension between

his rights under the Fifth Amendment and his obligations

under the CJA, and hence never gave the district court an

opportunity either to resolve such tension by allowing him to

produce evidence of his financial status subject to in camera
 

inspection or a grant of immunity, or to refuse to do so.

His assertion on appeal that he was put to an impermissible

"choice" between conflicting constitutional rights,

therefore, is too speculative to merit relief. See United
 

States v. Peister, 631 F.2d at 662.
 

 

1. Beverly's statement to Pre-Trial Services that he was
earning $4,000 a month, the fact that he was able to pay a
lawyer to represent him during the IRS' investigation, and
the evidence produced at trial that he owned two condominiums
and a boat, and had earned more than $60,000 in 1985 and
1986, and more than $85,000 in 1987, all suggest, rather,
that Beverly withdrew the motion because he had concluded
that he would not be able to convince the court to give him a
free lawyer. This evidence also suggests that, had the
district court reviewed Beverly's financial status (either in
 
camera or after a grant of immunity), it would nevertheless
 
have concluded that he was not entitled to appointed counsel
under the CJA.

 -5-

 Nor do we find any other suggestion in the record that

Beverly's decision to forego counsel was less than "knowing

and intelligent." Beverly argues that the district court

should have followed a prescribed series of questions in

order to ensure that the waiver was valid. See United States
 

v. McDowell, 814 F.2d 245, 250, 251-52 (6th Cir. 1987). But
 

this court does not require the district court to "issue a

particular warning or make specific findings of fact before

it allows a defendant to proceed pro se." United States v.
 

Hafen, 726 F.2d 21, 25 (1st Cir. 1984). We have said that
 

the district court can allow a criminal defendant to

represent himself if all of the information available to the

court indicates that the defendant (1) understands "the

magnitude of the undertaking and the 'disadvantages of self-

representation,'" (2) is aware "that there are technical

rules governing the conduct of a trial, and that presenting a

defense is not a simple matter of telling one's story," and

(3) appreciates "the seriousness of the charge and of the

penalties he may be exposed to before deciding to take a

chance on his own skill." Maynard v. Meachum, 545 F.2d 273,
 

279 (1st Cir. 1976).

 Here, on the first day of trial, the district judge

quite explicitly asked Beverly whether he understood that he

had a right to a lawyer, and whether he chose nonetheless to

"go ahead without one," and Beverly quite explicitly answered

 -6-

that he did. By that time, moreover, the court had, in one

pre-trial hearing, described the charges to Beverly as

"serious," explained the potential penalties, and commented

on the "unique" nature of some of the motions that Beverly

had filed, and had heard Beverly, in another pre-trial

hearing, acknowledge that he was not an attorney and that he

did not "know all the procedures that this Court needs me to

perform." Although the process of review would be simplified

if the district court would engage in a more extended

colloquy and give a more specific warning than was done here,

and if it would "provide[] a short statement of its reasons

for finding a defendant's waiver of counsel to be knowing and

intelligent," United States v. Hafen, 726 F.2d at 25, we
 

cannot find, on the record before us, that the district court

erred in allowing Beverly to represent himself at trial.

 II
 

 Beverly's remaining arguments do not require extended

discussion. 

 1. Beverly contends that the testimony of IRS agents

concerning their interview with him in 1989 was inadmissible

because Beverly had not been properly warned about his Fifth

Amendment rights before the interview began. Beverly

concedes that the agents advised him of his rights in

"absolute accordance" with IRS procedures for so-called

"noncustodial" interviews, but says that his interview was in

 -7-

fact "custodial" and therefore required the agents to give

him full-blown Miranda warnings.
 

 "In evaluating whether a suspect was in custody and thus

entitled to Miranda warnings, we look to see, using objective
 

standards, whether there was a manifestation of a significant

deprivation of or restraint on the suspect's freedom of

movement, taking into account such factors as 'whether the

suspect was questioned in familiar or at least neutral

surroundings, the number of law enforcement officers present

at the scene, the degree of physical restraint placed upon

the suspect, and the duration and character of the

interrogation.'" United States v. Lanni, 951 F.2d 440, 442
 

(1st Cir. 1991) (citations omitted). Beverly, who was

represented by a lawyer during the IRS investigation, was

interviewed at the lawyer's office, in the lawyer's presence,

by two IRS agents. There is nothing in the record to suggest

that the agents physically restrained Beverly or gave him

reason to think he could not leave or terminate the

interview. The questioning lasted, according to Beverly,

only three hours, and we see no evidence that the questions

were coercive in nature, or that the agents were overbearing

in manner. In short, there are no indicia of a custodial

interrogation, and Beverly's protests that he nevertheless

felt intimidated will not avail him, because the test of
 

custody is objective: "the only relevant inquiry [with

 -8-

respect to whether a person was in custody for Miranda
 

purposes] is how a reasonable man in the suspect's position
 

would have understood his situation." Berkemer v. McCarty,
 

468 U.S. 420, 442 (1984).2

 2. Beverly says that IRS and Justice Department

procedures required the prosecutor in this case to obtain (a)

a Special Agent's Report, (b) a Criminal Referral Letter, (c)

a Prosecution Report, and (d) a signed Form 9131 before he

went to the grand jury for an indictment. He claims that the

prosecutor did not obtain these documents. 

 We may assume the truth of these premises because they

do not support Beverly's conclusion: that the resulting

indictment was flawed and that the trial court therefore

lacked jurisdiction to convict. "[A]n IRS agent's violation

of a regulation of this sort does not prevent prosecution and

conviction of a defendant. . . ." United States v. Michaud,
 

860 F.2d 495, 499 (1st Cir. 1988). The procedures Beverly

describes were not required by statute or the Constitution,

nor can Beverly reasonably contend that he relied on the

procedures, or that their breach had any effect on his

conduct. United States v. Caceres, 440 U.S. 741, 749-53
 

(1979). For similar reasons, we hold that even if the IRS

 

2. Nor do we see any evidence that the agents tricked
Beverly into waiving his Miranda rights. Beverly says that
 
the IRS agent who conducted the interview told him that he
was investigating the possibility of criminal violations, and
that appears to be exactly what the agent was doing.

 -9-

violated the Privacy Act by failing to keep Beverly's

Individual Master File up-to-date, the delinquency caused

Beverly no prejudice at trial and does not affect the

validity of his conviction.

 3. The district court did not deprive Beverly of any

discovery to which he was entitled. The government complied

with the district court's uniform order for automatic

discovery, and Beverly has not shown us that the prosecutor

withheld anything which the order required him to disclose,

or that he found and failed to disclose any exculpatory

material. Beverly's discovery motions ranged well beyond the

scope of Rule 16 and were properly denied. The prosecutor

complied with the Jencks Act, 18 U.S.C. 3500(a), by

supplying witness statements and reports to Beverly on the

morning of trial.

 4. We see no merit in Beverly's contention that neither

the Attorney General nor the Bureau of Prisons had statutory

authority to take custody of him after his conviction.

Beverly was convicted of five crimes, three committed before

November 1, 1987, and two committed after that date. As to

the first group, 18 U.S.C. 4082(a) authorized the Attorney

General to take custody, because the repeal of Section

4082(a) did not take effect until November 1, 1987. As to

the latter group, 18 U.S.C. 3621(a) -- which replaced

Section 4082(a) and applies to crimes committed after

 -10-

November 1, 1987 -- authorized the Bureau of Prisons to take

custody.

 Affirmed.
 

 -11-