**UNITED STATES of America,
Plaintiff,**

v.

**John HYDE, Defendant.**

**No. CR02–0016 PJH.**

United States District Court,
N.D. California.

June 17, 2002.

Matthew Jacobs, Asst. U.S. Atty., San Francisco, CA, for U.S.

Rebecca Silbert, Deputy Federal Public Defender, San Francisco, CA, for defendant.

## ORDER RE DEFENDANT'S MOTION TO KEEP FINANCIAL AFFIDAVIT UNDER SEAL

CHEN, United States Magistrate Judge.

On January 22, 2002, the federal grand jury returned a 64–count indictment against John B. Hyde for, *inter alia,* mail fraud, health care fraud and money laundering violations, and seeking forfeiture of over $1.2 million of monies traceable to money laundering.

On February 5, 2002, defendant Hyde requested the Court appoint counsel to represent him, and submitted a financial affidavit in support of is request. At defendant Hyde's request, the Court provisionally placed the financial affidavit under seal and continued the matter to review the affidavit. On February 8, 2002, the Court questioned defendant Hyde *ex parte* and under seal about the affidavit and his finances. Prior to the *ex parte* examination, the Government suggested areas of inquiry since the Government was in possession of deposition testimony and documents obtained in the context of prior proceedings before the Securities Exchange Commission (SEC) involving defendant Hyde, and had some knowledge of his finances. Satisfied with the information provided by defendant Hyde, on February 13, 2002, the Court appointed the Federal Public Defender to represent him.

On February 25, 2002, defendant Hyde filed this motion to keep the financial affidavit under seal to which the Government opposed. Subsequent to hearing the motion, on March 27, 2002, the parties submitted supplemental briefs and evidentiary material. Based in part upon the supplemental brief and evidence filed by the Government raising numerous factual issues, the Court conducted a further *ex parte* examination of defendant Hyde under oath and under seal, on April 24, 2002. The Court also ordered defendant Hyde to produce numerous documents upon which he was examined. On April 30, 2002, the Court, *inter alia,* ordered that defendant Hyde contribute $500 per month towards the cost of defense, subject to re-evaluation and re-assessment should new information come to light or circumstances change.

## ANALYSIS

Defendant Hyde contends that the Court should keep his financial affidavit under seal in order to preserve his Fifth Amendment rights against self-incrimination. He contends that his financial affidavit contains financial information which the Government may use, or which could lead to evidence, against him in the underlying case. On the other hand, the Government argues that defendant Hyde's financial affidavit should not be sealed, because of the public interest in open proceedings, sealing is premature and obstructs the truth-seeking function of the court, and because the Fifth Amendment is not implicated in case at bar.

To the extent the Government's opposition to sealing is predicated on an asserted interest in vindicating the public's right of access to documents filed with the court under *Seattle Times Co. v. U.S. District Court,* 845 F.2d 1513 (9th Cir.1988), the Ninth Circuit has held that the Government does not have third party standing to assert said right. *United States v. Hickey,* 185 F.3d 1064, 1066 (9th Cir.1999) (*"Hickey II "*). Unlike *Seattle Times, supra,* no party representing the public interest such as a newspaper organization is before the Court. Accordingly, the court's discussion in *Seattle Times* of the First Amendment

scrutiny of closed judicial proceedings is inapposite here.

The Government also asserts an interest in protecting the truth seeking function of the court, noting that *ex parte* examination without the benefit of the full adversarial process of cross-examination compromises the ability of the court to ascertain the truth and permits a defendant to commit perjury with virtual impunity. *See United States v. Harris,* 707 F.2d 653, 662 (2nd Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). While the court recognizes the benefit of the full adversarial process, it notes that courts retain the authority (and so exercised that authority here) to conduct an *ex parte* examination of defendant Hyde.[1] The effectiveness of that examination can be enhanced where, as here, specific areas of inquiry are suggested by the Government based on a previous examination and investigation of defendant Hyde in SEC proceedings. More importantly, as the Ninth Circuit pointed out in *Hickey II, supra,* once a defendant has testified or concluded his testimony, the Government will have a stronger argument for unsealing the affidavit since at that point the Fifth Amendment concern will be greatly diminished. *Hickey II,* 185 F.3d at 1067. The Government thus maintains the right to investigate possible perjury in the affidavit after trial, *see id.,* and ultimately the truth seeking function will not be compromised.

Moreover, the interest in protecting the public fisc is protected inasmuch as appointment of counsel can be conditioned on a defendant's obligation to repay defense costs should it be later determined he or she is in fact able to pay. Irretrievable loss would occur only if after finding out a defendant's true finances the court is unable to recover defense costs because defendant's assets have dissipated in the interim. Whether the Government has standing to assert this interest is unclear. The Government has cited no case establishing such standing.

Nonetheless, nothing precludes the Court in this context from taking steps *sua sponte* to protect the First Amendment interest of the public and/or the Court's interest in protecting its truth seeking function and public fisc for appointment of counsel over which it maintains some responsibility. Irrespective of the Government's possible lack of standing, the Court finds it appropriate to scrutinize defendant Hyde's Fifth Amendment claim to ensure it warrants sealing. *Cf.* Northern District of California Civil Local Rule 79–5 (only information requiring confidentiality should be sealed).

■ "The Fifth Amendment privilege against self-incrimination protects the accused from being incriminated by his or her own compelled testimonial communications." *United States v. Hickey,* 997 F.Supp. 1206, 1207 (N.D.Cal.1998) *("Hickey I ")*, *dismissed and aff'd. on other grounds, Hickey II,* 185 F.3d at 1064; *see Seattle Times,* 845 F.2d at 1518. The parties agree that to claim the Fifth Amendment privilege against self-incrimination, the accused must be confronted by substantial hazards of self-incrimination that are "real and appreciable" and not merely "imaginary and unsubstantial." *Seattle Times,* 845 F.2d at 1518; *see also Hickey I,* 997 F.Supp. at 1207. However, "the information that would be revealed by direct answer need not be such as would itself support a criminal conviction, however, but must simply 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.' " *United*

---

**1.** The Court has considerable discretion in inquiring into the defendant's finances in determining eligibility for appointed counsel.

*See United States v. Gravatt,* 868 F.2d 585, 590–91 and n. 7 (3rd Cir.1989).

*States v. Neff,* 615 F.2d 1235, 1239 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980), *quoting, Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). It is enough if the responses would merely provide a lead or clue to evidence having a tendency to incriminate. *Neff,* 615 F.2d at 1239.

The Government argues that the Court's current sealing of defendant Hyde's financial affidavit is premature to the extent that the Government has not yet attempted to use any of the information contained therein. The Government cites *Seattle Times, supra,* to support this contention, wherein the court stated, "[w]e do not know what use, if any, the government will try to make of the information contained in the affidavits. Therefore, any fifth amendment problem is at this juncture speculative and prospective only." *Seattle Times,* 845 F.2d at 1519. (Wiggins, J.)

While Judge Wiggins' opinion in *Seattle Times* appears to embrace the view that "[t]he time for protection will come when, if ever, the government attempts to use the information against the defendant at trial or if the government attempts to use any information derived from the facts revealed in the affidavits," *Id.* at 1519 (internal citation omitted), his views did not command a majority of the panel. Judge Reinhardt's concurring opinion, which provided the dispositive vote in ordering release of the financial affidavits under seal,[2] did not go so far. Judge Reinhardt found only that *"[i]n the case before us* the appropriate time for considering the fifth amendment issue is ... if and when the government seeks to use any material contained in the affidavit supplied by Nickell," and that the disclosures at issue were "innocuous" and "highly unlikely to be incrim-

inatory." *Id.* at 1519–29 (emphasis added). Importantly, Judge Reinhardt concluded:

> The opinion should not be understood as holding that the only appropriate time to consider the fifth amendment issue is when the government seeks to use the testimony in question. At least until the question left open by the Court in *Kahan* is decided [whether use immunity applies to statements a defendant makes with respect to his finances in obtaining court-appointed counsel], *"it is appropriate for a defendant to raise a fifth amendment objection at the time he is required to submit the financial information necessary to obtain court-appointed counsel."*

*Id.* at 1520 (emphasis added). Judge Reinhardt's concurring opinion implies that only where on its face the financial affidavit is unlikely to be incriminatory—*e.g.,* where it has no evident relationship to the charges in the underlying criminal case—the hazards of self-incrimination are not sufficiently "real and appreciable" to warrant consideration of a Fifth Amendment objection prior to attempted use by the Government. Conversely, where the financial affidavit is likely to be incriminatory—*e.g.,* where the financial information appears related to the underlying case—the Fifth Amendment objection need not await attempted use by the Government but must be considered upon a defendant's submission of the financial information.

Consistent with Judge Reinhardt's concurring opinion in *Seattle Times,* this District Court in *Hickey II, supra,* (per Magistrate Judge James) concluded that a financial affidavit submitted in connection with a request for appointment of counsel must be sealed where a defendant's financial status as revealed by sub-

---

**2.** Judge Koelsch would have found that the District Court's order sealing the financial affidavits was not clearly erroneous and thus would have maintained them under seal.

mitted affidavits is directly relevant to the underlying charges.

The Court distinguishes the facts of *Seattle Times* from this case. In *Seattle Times,* the defendant was charged with placing lethal doses of cyanide in Excedrin capsules. *Seattle Times,* 845 F.2d at 1514. The defendant's financial condition was irrelevant to the criminal charges. Thus, the defendant was not faced with real and appreciable hazards of self-incrimination.

In contrast, Defendants are charged with wire fraud, mail fraud, and securities fraud. The government is seeking to locate and prove that Defendants secreted over 1.4 million dollars each. The allegations in the indictments raise issues concerning Defendants' financial assets and liabilities, and Defendants' access to assets. Defendants' financial affidavits contain information regarding Defendants' financial status, which is directly relevant to the charges against them. Thus, Defendants are faced with substantial and real hazards of incrimination should the Court unseal the financial affidavits.

*Hickey I,* 997 F.Supp. at 1208–09.

■ This Court finds that *Hickey I* properly states the applicable legal standard and concludes that the instant case is not materially distinguishable from *Hickey I.* As in *Hickey I,* defendant Hyde is criminally charged with mail and health care fraud, money laundering, engaging in monetary transaction in property derived from specified unlawful authority and aiding and abetting. The indictment seeks forfeiture of $1,248,284.46 as property involved in, or traceable to, defendant Hyde's alleged money laundering and seeks in the alternative, if such funds cannot be found, forfeiture of his interest in defendant Hyde's residence in Stinson Beach, California. Defendant Hyde's financial status may provide probative evidence of his allegedly fraudulent conduct and money laundering. Moreover, the charges seek to trace assets involved in or traceable to the alleged money laundering and forfeiture of such traceable assets. Accordingly, the allegations and charges of the indictment raise issues which directly concern the status of defendant Hyde's finances (current finances, assets, sources of money, ownership of his residence), as reported on the financial affidavit filed and as disclosed upon *ex parte* examination by the Court in connection with his request to appoint counsel. (Mot. to Keep Financial Affidavit Under Seal, 3–4.)

Thus, defendant Hyde's financial affidavit and related *in camera* statements are as relevant to the charges in the case at bar as the financial affidavits were to the charges in *Hickey I.* Consequently, as in *Hickey I,* there is a sufficiently "real and appreciable" hazard of self-incrimination so as to warrant sealing of the financial affidavit at least until completion of his testimony at trial or conclusion of trial.

The Government also argues that defendant Hyde does not show with specific particularity how specific aspects of the financial affidavit would implicate his Fifth Amendment rights and that Fifth Amendment assertions should, as they have, in the context of grand jury testimony, be evaluated on a question by question basis. However, the *Hickey I* court based its decision on the nature of the charges involved and its review of the affidavit as a whole in identifying whether the information in the affidavit was sufficiently related to the charges in order to trigger Fifth Amendment protection. *Hickey I,* 997 F.Supp. at 1208–09. *Hickey I 's* analysis is entirely correct. Unlike discrete questions posed in the context of a grand jury, all the portions of the financial affidavit comprise a composite picture of defendant Hyde's financial status which is generally relevant to the Government's charges and

allegations as discussed above. No single piece of information on the financial affidavit can reasonably be parsed out and isolated given its integral relationship to the whole. Moreover, defendant Hyde cannot be required to provide a detailed explanation of how specific line items in the financial affidavit would subject him to criminal liability without running the risk of disclosing the very information which he is trying to protect under the Fifth Amendment.

■ Finally, the Government argues that the Fifth Amendment does not apply to defendant Hyde's financial affidavit because the affidavit does not constitute "compelled testimony" as required by the Fifth Amendment. While neither the Supreme Court nor the Ninth Circuit has definitively held, the weight of authority has either held or assumed that financial disclosures made as a condition to obtaining appointed counsel is sufficiently compelled so as to invoke Fifth Amendment concerns. *See, e.g., United States v. Gravatt,* 868 F.2d 585, 590 (3rd Cir.1989); *United States v. Davis,* 958 F.2d 47, 49 n. 4 (4th Cir.), *cert. denied,* 506 U.S. 878, 113 S.Ct. 223, 121 L.Ed.2d 161 (1992); *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977); *United States v. Hardwell,* 80 F.3d 1471, 1483–84 (10th Cir.1996); *cf. Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (testimony in support of motion to suppress under Fourth Amendment may not be used at trial on issue of guilt).

Pivotal to the analysis is the consequence of failing to provide the subject information. As Justice O'Connor observed in *McKune v. Lile,* —— U.S. ——, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the Court has recognized that certain conse-

quences such as loss of employment, loss of a professional license, ineligibility or receive Government contracts, and the loss of the right to participate in political associations and to hold public office, have been be deemed sufficiently coercive so as to trigger Fifth Amendment protection. *Id.* at —— – ——, 122 S.Ct. at 2032–33 (O'Connor, J., concurring). It is beyond dispute where the consequence of silence is impairment of the fairness of the criminal justice process, there is sufficient compulsion so as to implicate the Fifth Amendment. *See id.* at ——, 122 S.Ct. at 2035 (imposition of punishment for exercise of Fifth Amendment right must be "accomplished through a fair criminal process") (O'Connor, J., concurring); *cf. Griffin v. California,* 380 U.S. 609, 613–615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (prosecutor may not comment on defendant's failure to testify).

Here, at stake is defendant Hyde's right to counsel guaranteed by the Sixth Amendment under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). This right is fundamental: "a fair trial in our adversary system of criminal justice cannot be assured if the defendant is unrepresented." *Gravatt,* 868 F.2d at 591. Submission of the financial affidavit at issue here is a condition to defendant Hyde obtaining court appointed counsel. Given the fundamental constitutional right at stake and the grave consequence were defendant Hyde to withhold the affidavit, the Court concludes that a financial affidavit submitted to establish eligibility for appointment of counsel constitutes "compelled" testimony within the meaning of the Fifth Amendment.[3]

---

**3.** Consistent with the Fifth Amendment concerns, the Guide to Judiciary Policy and Procedure, Vol. VII, Ch. II, sec. A, 203(B) provides "[e]mployees of law enforcement agencies or United States attorney offices should not participate in the completion of the CJA for 23 [financial affidavit] or seek to obtain information about a person request-

### CONCLUSION

For the reasons stated above, defendant Hyde's Motion to Keep Financial Affidavit Under Seal (Docket No. 20) is **GRANTED.** Upon the Government's motion, if any, the Court will reconsider the status of the affidavit following trial testimony of defendant Hyde or resolution of the criminal case.

IT IS SO ORDERED.

ing the appointment of counsel concerning

his or her eligibility.''