**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lawrence SARSOUN,
Defendant–Appellant.**

No. 85–3199.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1987.

Decided Dec. 3, 1987.

Rehearing and Rehearing En Banc
Denied Jan. 12, 1988.

---

Edward J. Lewis, III, Jenner & Block, Chicago, Ill., for Sarsoun.

John G. McKenzie, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for U.S.

Before WOOD, and RIPPLE, Circuit Judges, and GORDON, Senior District Judge.[*]

HARLINGTON WOOD Jr., Circuit Judge.

Defendant Lawrence Sarsoun was convicted following a bench trial of eight counts of tax evasion, failure to file income tax returns, and filing a false withholding statement, in violation of 26 U.S.C. §§ 7201, 7203 and 7205. Sarsoun, who appeared *pro se* at trial, claims on appeal that he was denied his sixth amendment right to the assistance of counsel. The district court denied Sarsoun's request for appointment of counsel because the defendant failed to demonstrate that he was unable to afford private counsel. We affirm.

## I. FACTUAL BACKGROUND

Sarsoun appeared for arraignment before Judge Rovner in January 1985. Sarsoun was not represented by counsel, and refused to accept court-appointed counsel for fear that he would be "acquiescing to the jurisdiction of the court." Instead, Sarsoun asked the court to appoint lay persons from Utah, Idaho, and Connecticut to assist him at trial. Judge Rovner decided to take Sarsoun's motion for lay assistance under advisement. After explaining at length the difficulties and disadvantages of self-representation, Judge Rovner found that Sar-

---

[*] The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

soun had knowingly and voluntarily waived his right to counsel.

Following the arraignment, the case was assigned to Judge Will. Sarsoun first appeared before Judge Will on March 13, 1985. Judge Will urged Sarsoun to obtain counsel, explaining that having an attorney would not preclude any jurisdictional challenges by the defendant. The judge also told Sarsoun that he could not receive lay assistance at government expense. Sarsoun agreed to seek appointment of counsel by filing the appropriate form, CJA Form 23,[1] with the Federal Defender Program.

On March 21, 1985, Sarsoun once again appeared *pro se* before Judge Will. Sarsoun told Judge Will that he had not applied for appointment of counsel because he believed that filling out CJA Form 23 would cause him to be a witness against himself. In addition, Sarsoun did not want to list his income in terms of dollars because he disagreed with the definition of a dollar. Judge Will explained that any information the defendant supplied on the financial affidavit could not be used against him unless he committed perjury. Judge Will also told Sarsoun that he could list the information in terms of Federal Reserve Notes, rather than dollars. Sarsoun then agreed to follow the judge's advice and apply for counsel through the Federal Defender Program.

Sarsoun appeared before Judge Will at a third status hearing on April 25, 1985, and again requested that the judge appoint counsel for him. Sarsoun had gone to the Federal Defender Program's office, but refused to submit CJA Form 23 when he learned that the United States Attorney would be allowed to see his application.

Judge Will reiterated that, absent perjury, the application could not be used against the defendant. Judge Will urged Sarsoun to either retain counsel or provide the Federal Defender Program with the financial information necessary to qualify for appointed counsel.

On April 30, 1985, Sarsoun filed an Application to Proceed In Forma Pauperis. This application stated that Sarsoun's current salary was $2,040 per month and that he had $300 in cash. The form indicated that Sarsoun did not receive money from any other source, although the word "money" was circled and had a question mark next to it. The defendant also claimed that he owned no significant assets, but that he paid $400–$500 per month to support his wife and children. Because of his religious belief against taking oaths, Sarsoun had crossed out the words "under penalty of perjury" at the end of the form. Judge Will denied the application on May 9, 1985.

Trial began on June 3, 1985.[2] At the outset, Sarsoun stated that he was not ready for trial because he had not received assistance of counsel. Judge Will responded that because Sarsoun had repeatedly refused to disclose the requisite financial information, Sarsoun had not shown the court that he was qualified for appointment of counsel.[3] The court found that Sarsoun had effectively waived his right to counsel by refusing to either hire counsel or show that he was entitled to appointed counsel.

Following a three-day bench trial at which the defendant proceeded *pro se*, the court found Sarsoun guilty of eight of the nine counts charged in the indictment. Sentencing was set for June 27, 1985.

---

**1.** The Criminal Justice Act, 18 U.S.C. § 3006A, provides for the appointment of counsel for federal defendants who are financially unable to obtain counsel. CJA Form 23 is a one-page financial affidavit commonly used to ascertain whether a defendant qualifies for appointment of counsel under the Criminal Justice Act.

**2.** The defendant also filed a form that the defendant entitled an Application of Indigent Accused for Appointment of Counsel and Order on June 3. The application asserted that Sarsoun was financially unable to employ an attorney;

however, the application contained no financial data to support this assertion. Judge Will denied the application.

**3.** Judge Will explained that he could not appoint counsel because he did not know what the defendant's income was. Sarsoun then referred the judge to his Application to Proceed In Forma Pauperis. When Judge Will asked Sarsoun to verify the income he had listed, however, Sarsoun refused to reply.

On June 20, the defendant filed a motion for the appointment of counsel and finally submitted CJA Form 23 in support of his motion. Although the court had some reservations about whether Sarsoun qualified under the Criminal Justice Act, the court approved appointment of counsel for Sarsoun on the condition that the court might later order Sarsoun to reimburse the Federal Defender Program.

Prior to his sentencing, the defendant fled to Germany.[4] Upon his return, Sarsoun was sentenced to one year in a work release program, a $10,000 fine, and five years probation. A condition of the probation required Sarsoun to pay all back taxes, with interest and penalties.

## II. DISCUSSION

■ The defendant contends that he was denied his sixth amendment right to counsel as a result of two alleged errors of the district court.[5] The defendant asserts that the court did not make an appropriate inquiry into the defendant's financial ability to obtain counsel as required by the Criminal Justice Act. Sarsoun also claims that, contrary to the findings of the district court, his repeated refusal to fill out CJA Form 23 did not impliedly waive his right to counsel.

■ The sixth amendment provides that an accused in a criminal prosecution has a right to the assistance of counsel. A trial court must appoint counsel to represent a defendant who is financially unable to retain counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Congress implemented the constitutional right to counsel in the Criminal Justice Act

of 1964, 18 U.S.C. § 3006A. The Act provides:

Unless the defendant waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him.

18 U.S.C. § 3006A(b).

CJA Form 23 is a form financial affidavit developed as a tool to aid courts in determining whether a particular defendant is able to afford counsel. *United States v. Ellsworth*, 547 F.2d 1096, 1097 (9th Cir. 1976), *cert. denied*, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977). Neither CJA Form 23 nor any other particular method of ascertaining a defendant's financial status is authorized by the Criminal Justice Act. The Act merely requires an "appropriate inquiry."

■ Once a defendant tells the court that he is financially unable to obtain counsel, the court clearly has a duty to make an appropriate inquiry into the defendant's financial condition. 18 U.S.C. § 3006A(b); *United States v. Martin–Trigona*, 684 F.2d 485, 490 (7th Cir.1982); *United States v. Cohen*, 419 F.2d 1124, 1127 (8th Cir.1969). The burden of proving inadequate financial means, however, lies with the defendant. *See United States v. Harris*, 707 F.2d 653, 660 (2d Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); *United States v. Peister*, 631 F.2d 658, 662 (10th Cir.1980); *United States v. Anderson*, 567 F.2d 839, 840 (8th Cir.1977) (per curiam); *Ellsworth*, 547 F.2d at 1098; *United States v. Kaufman*, 452 F.2d 1202, 1202 (4th Cir. 1971) (per curiam), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972). A trial court that finds that the defendant did not meet his burden of proof, and con-

---

**4.** At the sentencing hearing, Sarsoun told Judge Will that he financed his European trip by holding a garage sale. August 8, 1985 tr. at 24.

**5.** The government argues that we lack jurisdiction over this appeal. This court rejected that claim by order dated June 25, 1987. Sarsoun filed timely motions for a new trial. These post-trial motions extended the time for taking an appeal. Fed.R.App.P. 4(b). Thus, Sarsoun's notice of appeal, filed within ten days of the

order disposing of the post-trial motions, was within the jurisdictional filing period.

While the post-trial motions were pending, Sarsoun also filed a form waiver of his right to appeal. Nevertheless, a written waiver unsupported by consideration will not deprive a court of jurisdiction if the defendant timely files his appeal. *See Bell v. United States*, 9 F.2d 820, 821 (9th Cir.1925).

sequently denies the defendant's motion for appointed counsel, will not be reversed unless clearly erroneous. *United States v. Binder*, 794 F.2d 1195, 1201 (7th Cir.), *cert. denied sub nom. Celani v. United States*, —— U.S. ——, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986).

Sarsoun, relying on *United States v. Martin–Trigona*, 684 F.2d 485 (7th Cir. 1982), argues that Judge Will completely failed to conduct an appropriate inquiry into his financial resources. We disagree.

In *Martin–Trigona*, the defendant appeared *pro se* and informed the court on numerous occasions that he wished to be represented by counsel. The defendant advised the court that he was financially unable to retain counsel because his assets were encumbered. The defendant requested that the court either appoint counsel for him under the Criminal Justice Act or grant a continuance to enable him to liquidate his assets. On appeal, this court held that the lower court committed reversible error by completely failing to conduct an inquiry into the defendant's financial means. *Id.* at 488–90.[6]

Unlike the trial court in *Martin–Trigona*, Judge Will repeatedly urged the defendant to supply sufficient financial information for the court to determine whether he qualified for appointed counsel. Judge

Will patiently assured Sarsoun that receiving assistance from a public defender would not foreclose any jurisdictional challenges and that the information Sarsoun included in the financial affidavit could not be used against him. Finally, Judge Will attempted to question Sarsoun about his income; Sarsoun refused to answer.[7] Thus, unlike *Martin–Trigona*, Judge Will did attempt to solicit financial information from the defendant.

The defendant also relies on *United States v. Moore*, 671 F.2d 139 (5th Cir. 1982), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983). As in the present case, the defendant in *Moore* refused to complete CJA Form 23 because he feared it would incriminate him.

The Fifth Circuit in *Moore* firmly rejected an absolute requirement that a defendant must execute CJA Form 23 to have counsel appointed. *Id.* at 140. The court of appeals found that the information available to the trial court had "laid most of a foundation to establish sufficient evidence for a finding that the accused could not afford to hire counsel." *Id.* at 141.

■ The information available to Judge Will, however, did not strongly indicate that Sarsoun qualified for appointment of counsel.[8] In addition, Sarsoun had demon-

---

**6.** The district court in *Martin–Trigona* wrongly assumed that because the defendant was not indigent, he could not qualify for appointed counsel. The Criminal Justice Act, however, merely requires that a defendant be financially unable to obtain counsel—a lower standard than indigency. 18 U.S.C. § 3006A(b). *See Martin–Trigona*, 684 F.2d at 490.

**7.** The following exchange occurred on the first day of trial:

THE COURT: Mr. Sarsoun, I don't know whether you are marginal or not marginal, because I don't know what your income is.
MR. SARSOUN: That is not right. You had a forma pauperis—
THE COURT: In forma pauperis?
MR. SARSOUN: Remember?
THE COURT: You certainly don't qualify for in forma pauperis. Was that your income, $26,000 a year or something like that?
MR. SARSOUN: I am not going to answer that question.
June 3, 1985 tr. at 8.

**8.** In *Moore*, the defendant told the trial judge that he did not own a car or house and could not afford counsel. In addition, the government alleged in the information that the defendant received gross income of $6,551.87 in 1975 and $4,377.97 in 1976.

Sarsoun told Judge Will that he did not own a car, had no money in the bank, and could not afford a lawyer. The indictment, however, charged Sarsoun with receiving gross income of $45,128 in 1978, $28,035 in 1979, and $26,459 in 1980. These allegations, while not conclusive, indicated the need for current financial information before the court could decide whether Sarsoun qualified for appointed counsel. *See United States v. Allen*, 596 F.2d 227, 232 (7th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979) (defendant earning over $25,-000 annually was not entitled to free legal services).

Sarsoun also filed an Application to Proceed In Forma Pauperis which contained much of the same information that applicants list on CJA Form 23. Sarsoun, however, did not sign the

strated that he was unwilling to respond to questions regarding his income. Unlike *Moore*, these facts do not lay a foundation to establish sufficient evidence that Sarsoun could not afford counsel. Therefore, Judge Will was not clearly erroneous in not pursuing further the matter of Sarsoun's financial need.

■ Sarsoun also argues that he did not impliedly waive his sixth amendment right to counsel. We believe that courts should not require defendants to submit CJA Form 23 or some similar form as the only way to secure appointed counsel, but that is not this case. Thus, Sarsoun is correct that merely failing to complete a particular form is not tantamount to waiving the right to counsel.

■ In this case, however, Sarsoun refused to cooperate with the court. Twice after Judge Will assured Sarsoun that the government could not use CJA Form 23 to incriminate him, Sarsoun agreed to execute the form. Nevertheless, Sarsoun did not complete the form until after his trial. When Sarsoun did supply the court with financial information in his Application to Proceed In Forma Pauperis, he refused to sign under penalty of perjury. Finally, Sarsoun would not answer Judge Will's questions about his income. Although Sarsoun was concerned about the risk of self-incrimination, he received adequate assurance from Judge Will. In addition, both Judge Rovner and Judge Will advised Sarsoun of the difficulties and disadvantages of self-representation, urging him to obtain counsel. Therefore, Judge Will was not clearly erroneous in finding that Sarsoun had impliedly waived his right to counsel. *See United States v. Weninger*, 624 F.2d 163 (10th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) (implied waiver of right to counsel where defendant failed to obtain counsel after repeated urging by trial court). *See also United States v. Moore*, 706 F.2d 538 (5th

Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983) (persistent, unreasonable demand for appointment of new counsel is functional equivalent of knowing and voluntary waiver of counsel); *United States v. Gipson*, 693 F.2d 109 (10th Cir. 1982), *cert. denied*, 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983) (defendant's delaying tactics of unreasonably refusing competent counsel could constitute waiver of counsel); *United States v. Romero*, 640 F.2d 1014 (9th Cir.1981) (defendant tax protestor attempted to create error at trial by obtaining appointed counsel and then waiving it).

■ The defendant points out that courts, although not uniformly, have devised alternative methods to elicit financial information from defendants who refuse to complete a financial affidavit. *See United States v. Binder*, 794 F.2d 1195, 1201 (7th Cir.), *cert. denied sub nom. Celani v. United States*, ‒‒‒ U.S. ‒‒‒, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986) (court appointed counsel to represent defendants at hearing on their eligibility for appointed counsel); *United States v. Anderson*, 567 F.2d 839 (8th Cir.1977) (per curiam) (trial court appointed counsel to represent defendant at hearing on his eligibility for appointed counsel; appellate court also required trial court to receive financial information at an *in camera* hearing); *United States v. Ellsworth*, 547 F.2d 1096 (9th Cir.1976), *cert. denied*, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977) (court gave defendant written assurance that court would review his financial statement *in camera* and then seal the contents). In some cases, trial judges may choose to offer defendants who fear self-incrimination additional safeguards. Courts, however, are not required to conduct *ex parte, in camera* hearings to determine whether a defendant is eligible for appointed counsel. *United States v. Harris*, 707 F.2d 653, 662–63 (2d Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78

form under penalty of perjury. When asked to verify the income listed on the application, Sarsoun declined to answer.

When Sarsoun finally filed CJA Form 23 following his trial, Judge Will still was not completely convinced that he qualified for appointed counsel. At the government's suggestion, the judge agreed to appoint counsel on the condition that the court might later require Sarsoun to reimburse the government.

L.Ed.2d 688 (1983).[9] *See United States v. Kaufman,* 452 F.2d 1202 (4th Cir.1971) (per curiam), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972) (defendant who refused to execute financial affidavit not entitled to appointed counsel); *Ellsworth,* 547 F.2d at 1098 (citing *Kaufman* ).

■■■ In this case, Judge Will repeatedly assured Sarsoun that the government could not use the information he supplied in the financial affidavit to incriminate him. In *United States v. Peister,* 631 F.2d 658 (10th Cir.1980), the Tenth Circuit found that merely requiring a defendant to supply financial information does not conflict with the fifth amendment. Until the government attempts to use the information against the defendant at trial, any encroachment on the fifth amendment protection against self-incrimination is speculative and prospective only. Therefore, the trial court did not violate the defendant's constitutional rights by denying him additional safeguards against the risk of self-incrimination. *Id.* at 662. *See United States v. Branker,* 418 F.2d 378 (2d Cir. 1969) (financial information disclosed in defendant's motion to obtain counsel or proceed in forma pauperis may not be used to incriminate the defendant); *cf. Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (testimony given by defendant in support of motion to suppress evidence on fourth amendment grounds cannot be used against him at trial). In addition, a trial court may prefer an adversarial, rather than *ex parte,* hearing so that the government has an opportunity to object to the statements by the defendant. *See Harris,* 707 F.2d at 663 ("speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings"). Consequently, given Judge Will's repeated assurances that Sarsoun would not risk incriminating himself by disclosing financial information, we cannot say that Judge Will was clearly erroneous in not offering the defendant additional safeguards against self-incrimination.

**9.** In *Harris,* the Second Circuit noted that the Criminal Justice Act provides for *ex parte* applications for some services. *See* 18 U.S.C.

## III. CONCLUSION

In affirming this case we are not holding that unless a defendant executes a particular form appointment of counsel will not be considered. That is not what happened before Judge Will. This tax protestor had reasonable and ample opportunity to secure the appointment of counsel without executing the particular form provided appointment was financially justified. It is clear, however, that at that time defendant did not want anyone, including the judge, to know anything about his finances. It was his choice and he chose financial secrecy over legal assistance. Judge Will did all that could reasonably be expected to assist a stubborn and misguided defendant. There is a limit to what the courts need do about a defendant of this type. Defendant was given the benefit of the doubt when counsel was later appointed. From what is known about defendant's financial situation it does not appear in any event that he was a financially worthy prospect for appointed counsel at public expense.

AFFIRMED.

GORDON, Senior District Judge, dissenting.

I fully subscribe to the majority's observation that the execution of a particular form is not necessary in order for one to qualify for the appointment of counsel in a felony case. However, I respectfully disagree with the conclusion that the defendant in the instant case was not so burdened.

The record discloses that Judge Will unequivocally required the defendant to file CJA Form 23 as a condition to the appointment of counsel. Mr. Sarsoun requested the appointment of counsel at the pretrial proceedings and at the onset of trial. The district court insisted that Mr. Sarsoun fill out the CJA Form 23 on at least four occasions. He went to trial, pro se, on nine counts and was convicted on eight of them.

In chronological order the following colloquies took place:

§ 3006A(e)(1). There is no such requirement, however, for the appointment of counsel. *Harris,* 707 F.2d at 662.

*STATUS REPORT CONDUCTED ON MARCH 13, 1985.*

DEFENDANT SARSOUN: I can't pay a lawyer.

THE COURT: *Well, you are going to have to establish that on the basis of filling out the form.* If you fill out the form and it establishes that you are entitled to representation at the taxpayer's expense, I'll order somebody to represent you, *but you have to fill out the form first,* and it's subject to the penalties of perjury, as you know.... (emphasis added).

DEFENDANT SARSOUN: Oh, I'd like to have the advice of counsel. I'm not giving up on that issue.

THE COURT: All right, but then you better get a lawyer.

DEFENDANT SARSOUN: I can't afford a lawyer.

THE COURT: Well, you better prove you can't afford a lawyer, and I'll appoint one for you.

DEFENDANT SARSOUN: You want me to submit that form?

THE COURT: *The only way you can get me to appoint a lawyer for you is to submit the form.* (emphasis added).

DEFENDANT SARSOUN: I'll submit the form. By what date?

THE COURT: Unless you can establish that you are eligible, I can't authorize the appointment of counsel for you.

DEFENDANT SARSOUN: Okay.

THE COURT: So you are going to have to get the form submitted.

DEFENDANT SARSOUN: Okay. When can I bring it to you, tomorrow?

THE COURT: Well, no. Ms. Conlon, I know Mr. Coulson was asked previously to take Mr. Sarsoun down to the Defender office and get the form.

DEFENDANT SARSOUN: I was afraid to fill it out, your Honor. I still am.

THE COURT: *Well, if you don't want to fill it out, you can't get a lawyer.* (emphasis added).

(Transcript dated March 13, 1985, pages 37, 43, 44)

*STATUS REPORT CONDUCTED ON APRIL 25, 1985.*

DEFENDANT SARSOUN: Will the Court do its duty and appoint me counsel at any time?

THE COURT: Mr. Sarsoun, I told you you should get counsel all along. I sent you down to the Defender office, and that's where you get your counsel. *I don't appoint counsel. I send you to the Defender's office. You fill out the application.* You say you wouldn't fill out an application—(emphasis added).

DEFENDANT SARSOUN: I did.

(Transcript dated April 25, 1985, at pages 4 and 5)

*TRIAL, JUNE 3, 1985.*

After Mr. Sarsoun informed the court that he was not ready to proceed with the trial because he was without the assistance of counsel, the court stated the following:

THE COURT: I have offered you a defender appointed for you and *you refused to sign the necessary statement as to eligibility.* You know, I don't know what else I can do for you. *I told you to go to the Defender's office. You went. They gave you the form, and you refused to fill it out and sign it.* Isn't that right? ... You are not entitled to be represented at the taxpayers' expense unless you qualify under the Criminal Justice Act, *and the Criminal Justice Act says if you are unable to retain your own counsel, in order to establish that you must fill out the necessary form.* (emphasis added).

(Transcript dated June 3, 1985, at pages 2 and 3)

The district courts have an affirmative duty to make an appropriate inquiry into the defendant's financial ability to pay a lawyer. *United States v. Martin–Trigona,* 684 F.2d 485, 490 (7th Cir.1982). Aside from his efforts to have the defendant fill out CJA Form 23, Judge Will did not make an adequate or independent inquiry into Mr. Sarsoun's financial status. The majority states that the district court attempted to solicit financial information from Mr. Sarsoun by asking him (on the day of trial)

"Was that your income, $26,000 a year or something like that?" I do not believe that that question amounts to an "appropriate inquiry" into the defendant's financial ability to pay a lawyer.

The right to counsel in a felony case is too important to have it depend on a defendant's stubborn refusal to file a bureaucratic form when other means of obtaining the same information are available. CJA Form 23 may be a handy tool but, I believe that the district court could have fulfilled its duty to make an appropriate inquiry into the defendant's financial ability through alternative means.

I also disassociate myself from the majority's conclusion that "in any event" Mr. Sarsoun was not "a financially worthy prospect for appointed counsel." The district court did, in fact, belatedly appoint counsel for Mr. Sarsoun, but only after the trial and before sentencing; by that time the defendant had finally acquiesced in the requirement that he had to fill out the special form that had been demanded of him.

In my view, the trial court's adamant insistence on the submission of a specific form intruded on the defendant's rightful opportunity to try to qualify for the appointment of counsel at his felony trial.