**UNITED STATES of America, Plaintiff,**

v.

**Kelly Perry MADRZYK, John S. Madrzyk, Gregory Swan, David Sipich, Defendants.**

**No. 97 CR 105.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 12, 1998.

Kaarina Salovaara, U.S. Attorney's Office, Chicago, IL, for U.S.

George Joseph Murtaugh, Jr., Chicago, IL, for Kelly Perry Madrzyk.

Cynthia Louise Giacchetti, Law Offices of Cynthia Giacchetti, Chicago, IL, for John S. Madrzyk.

Andrea Elizabeth Gambino, Federal Defender Program, Chicago, IL, for Gregory Swan.

Stephen E. Eberhardt, Chicago, IL, for David A. Sipich.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendant Gregory Swan's Motion to File Under Seal Defendant's Financial Affidavit in Support of Appointment of Counsel. For the following reasons, the motion is denied. Nevertheless, nothing in this opinion should be interpreted to mute the blare of Gideon's trumpet throughout the land.[1]

---

**1.** *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (The Court opined that "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair

## I. BACKGROUND

On December 18, 1997, a Third Superseding Indictment was brought against Kelly Perry Madrzyk, John S. Madrzyk, Gregory Swan, and David Sipich.

Defendant, John S. Madrzyk ("Madrzyk"), was elected the Alderman of the 13th Ward in the City of Chicago ("City") in 1973, and was re-elected to four more consecutive terms, ending in October 1994. As an Alderman, Madrzyk had various responsibilities, including hiring, staffing, work assignments, and salaries. Madrzyk was also the Chairman of the City Council's Committee on Special Events and Cultural Affairs.

Defendant, Gregory Swan ("Swan"), was employed by the City as an assistant secretary to Madrzyk from approximately October 1989 through May 1990. From at least July 11, 1990, to at least December 1994, Swan did business as "InterGovernmental Associates" and as "Municipal Planners and Consultants." Swan entered into a contract with the City to provide consulting services. The contract was signed by Madrzyk and his former assistant secretary, Swan, and ran from approximately January 1992 through December 1993. Swan submitted his requests for compensation to Madrzyk.

Several counts are brought against Swan. In count one, Madrzyk and Swan are alleged to have engaged in a pattern of racketeering activities. In count two, Madrzyk and Swan are alleged to have conspired to engage in a pattern of racketeering activities. In count three, Madrzyk, in concert with Swan and others, are alleged to have caused the City to provide salaries, and in some instances benefits, to certain individuals who did no work, or very little work, for the City. Also, Madrzyk, in concert with Swan and others, are alleged to have accepted bribe payments and kickbacks in exchange for "ghost-payrolls." In count four, Madrzyk and Swan are alleged

to have committed mail fraud.[2] In counts eight and nine, Madrzyk and Swan[3] are alleged to have embezzled, stole, and misapplied more than $5,000 from the City. In count ten, Madrzyk and Swan are alleged to have committed and attempted to commit extortion. In count eleven, Madrzyk and Swan are alleged to have conducted financial transactions, involving proceeds of specified unlawful activity, with the intent to promote the carrying on of an unlawful activity. In counts twelve through sixteen, Swan is alleged to have committed federal income tax evasion.[4] In count twenty, Swan is alleged to have committed and attempted to commit extortion. In counts twenty-one and twenty-two, Swan is alleged to have falsely represented his social security number. The Third Superseding Indictment also contains forfeiture allegations against Swan.

The Federal Defender Organization has represented Swan since December 1995. However, Swan's counsel recently disclosed that the court file does not contain a copy of the appropriate forms for appointment of counsel; Swan's financial affidavit in support of appointment of counsel; or counsel's appearance on behalf of Swan. Swan's counsel has recently submitted the appropriate forms for appointment of counsel and counsel's appearance. However, Swan declines to make his financial affidavit a part of the public record in this case. Swan asserts, in light of the pending income tax charges against him, his Fifth Amendment right against self-incrimination, and moves the court to conduct an ex parte, in camera hearing to determine appointment of counsel, and to file his financial affidavit under seal.

## II. DISCUSSION

The Sixth Amendment guarantees every criminal defendant the right to have the assistance of counsel for his defense. *See*

---

trial unless counsel is provided for him." Thus, the Court explicitly held that the right to a counsel is "fundamental and essential to fair trials" in our country.).

2. Counts five through seven are brought solely against John S. Madrzyk and Kelly Perry Madrzyk. Kelly Madrzyk, daughter-in-law of John Madrzyk, has pleaded guilty to certain counts in the indictment.

3. Count eight is also brought against David A. Sipich, who has pleaded guilty to certain counts in the indictment.

4. Count seventeen is brought solely against David A. Sipich, and counts eighteen and nineteen are brought solely against Madrzyk.

U.S. Const. amend. VI. Congress implemented the Sixth Amendment right to counsel by enacting the Criminal Justice Act of 1964, 18 U.S.C. § 3006A. *See United States v. Sarsoun,* 834 F.2d 1358, 1361 (7th Cir. 1987). The Act provides that if a defendant appears without counsel, the court must advise him of his "right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel." 18 U.S.C. § 3006A(b). If a defendant asserts his right to legal representation, but claims financial inability to obtain a counsel, the court must conduct an appropriate inquiry to determine defendant's financially status. *Id.* A defendant bears the burden of establishing that he is financially unable to obtain counsel. *See Sarsoun,* 834 F.2d at 1361. If the court finds that a defendant is financially unable to obtain counsel, the court must appoint a counsel to represent him in his defense. 18 U.S.C. § 3006A(b).

Though, the Act does not require a defendant to submit CJA Form 23,[5] a form financial affidavit, a defendant will routinely submit one to assist the court in determining whether he is financially able to afford a counsel. *See Sarsoun,* 834 F.2d at 1361. "Realizing the CJA Form 23 is the quickest and most efficient method for determining that the appointment of counsel is financially justified, Mr. Swan wishes to make this available to the court." (Swan's Mot. at 3.) However, Swan contends that, in light of the pending income tax charges, disclosure of his financial affidavit to the Government may be incriminating. Thus, Swan seeks to "exercise his Fifth Amendment Privilege Against Self–Incrimination and will not make his financial affidavit a part of the public record in this case." *Id.* at 2.

Indisputably, "it [is] intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (The Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objec-

tion."). In the appointment of counsel context, so as not to place defendant in the untenable position of having to choose between his Sixth Amendment right to counsel and his Fifth Amendment privilege against self-incrimination, circuit courts have adopted two approaches. *See Sarsoun,* 834 F.2d at 1363–64; *see also United States v. Gravatt,* 868 F.2d 585, 590 (3d Cir.1989).

Under the first approach, courts "may afford the defendant the 'opportunity to disclose the required financial information to the trial court for it to review in camera, ... [following which] the financial data should be sealed and not made available for the purpose of tax prosecution.'" *See Gravatt,* 868 F.2d at 590 (*quoting United States v. Anderson,* 567 F.2d 839, 840–41 (8th Cir. 1977)); *see also United States v. Ellsworth,* 547 F.2d 1096, 1097 (9th Cir.1976).

Under the second approach, courts may conclude that any encroachment of defendant's Fifth Amendment privilege against self-incrimination is speculative and prospective, and deny conducting an ex parte, in camera hearing to determine appointment of counsel. *See Sarsoun,* 834 F.2d at 1363–64; *see also United States v. Peister,* 631 F.2d 658, 662 (10th Cir.1980).

The Seventh Circuit in *Sarsoun* recognized that "[i]n some cases, trial judges may choose to offer defendants who fear self-incrimination additional safeguards." *Id.* at 1363. However, the Seventh Circuit opined that courts "are not required to conduct ex parte, in camera hearings to determine whether a defendant is eligible for appointed counsel." *Id.* The Seventh Circuit further opined that "a trial court may prefer an adversarial, rather than ex parte, hearing so that the government has an opportunity to object to the statements by the defendant." *Id.* at 1364 (*citing United States v. Harris,* 707 F.2d 653, 663 (2d Cir.1983) ("speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings")).

---

5. In a separate order, the court has dealt with the inadequacy of the oath or affirmation on the form as a result of recent legislation.

In this case, the court adopts the second approach. In order to invoke the Fifth Amendment privilege, Swan must be faced with a " 'real and appreciable,' and not merely 'imaginary and unsubstantial,' " threat of self-incrimination. *Marchetti v. United States*, 390 U.S. 39, 48, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (citation omitted); *accord Baltimore City Dept. of Social Serv. v. Bouknight*, 493 U.S. 549, 563–64, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990); *California v. Byers*, 402 U.S. 424, 429, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). Here, Swan makes his claim without any specificity. Further, the contents of Swan's financial affidavit are unknown. Thus, "[w]e know neither the financial ability of the defendant nor what use, if any, might ever be made by the government of defendant's statements with regard to financial ability." *Peister*, 631 F.2d at 662. The Government has not yet indicated any intent to use the financial affidavit to incriminate Swan at trial. "Until the government attempts to use the information against the defendant at trial, any encroachment on the fifth amendment protection against self-incrimination is speculative and prospective only." *Sarsoun*, 834 F.2d at 1364.

Furthermore, the Government should not be denied the opportunity to provide the court with information contrary to Swan's financial affidavit, if any exists, because of the "speculative possibility of inadequate protection" of Swan's Fifth Amendment privileges.[6] *See Harris*, 707 F.2d at 663. Therefore, the court denies Swan's motion to conduct an ex parte, in camera hearing to determine appointment of counsel, and to file his financial affidavit under seal.

When, and if, the Government seeks to use the financial affidavit against Swan at trial, the court will address what permissible use, if any, the Government may make. *See Peister*, 631 F.2d at 662 ("The time for protection will come when, if ever, the government attempts to use the information against the defendant at trial."). Of course, the court will be governed by the controlling law which prohibits the Government from using Swan's statements to incriminate him during the Government's case-in-chief. *See Sarsoun*, 834 F.2d at 1364; *Simmons*, 390 U.S. at 394 ("when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection"). *Compare United States v. Kahan*, 415 U.S. 239, 243, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974) ("The protective shield of *Simmons* is not to be converted into a license for false representations on the issue of indigency free from the risk that the claimant will be held accountable for his falsehood."); *Harris v. New York*, 401 U.S. 222, 226, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (Although defendant's statements may be inadmissible against defendant in the Government's case-in-chief, it may be used to impeach his credibility if he voluntarily takes the stand.).

### III.  CONCLUSION

For the foregoing reasons, the court denies Swan's Motion to File Under Seal Defendant's Financial Affidavit in Support of Appointment of Counsel.

IT IS SO ORDERED.

---

6. Courts have an obligation to carefully scrutinize a defendant's allegation of poverty. *Cf. Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir.1998) (Pursuant to 28 U.S.C. § 1915(e)(2), Congress mandated that a district court " 'shall dismiss the case' if among other things 'the allegation of poverty is untrue....' ").