**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 12, 2007
Decided June 27, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3035

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> *v.* <br><br> LINH H. NGUYEN, <br> *Defendant-Appellant.* | Appeal from the United States <br> District Court for the Western <br> District of Wisconsin <br><br> No. 05 CR 165 <br><br> Barbara B. Crabb, <br> *Chief Judge.* |

### O R D E R

Linh Nguyen appeals his convictions for importing and possessing marijuana with intent to distribute.  *See* 21 U.S.C. §§ 952(a), 960, 841(a)(1).  The government prosecuted both charges under an aiding-and-abetting theory.  *See* 18 U.S.C. § 2. Nguyen now argues that he is entitled to a new trial because the district court deviated from the Seventh Circuit pattern instruction in charging the jury on aiding and abetting.  Because the challenged instruction correctly states the law, we affirm Nguyen's convictions.

### Background

The events underlying Nguyen's convictions occurred from December 1 to December 3, 2003, when Deepak Kad and Manjot Singh attempted to smuggle 400

pounds of marijuana from Canada to Wisconsin via Detroit. The pair crossed at the Detroit-Windsor tunnel on December 1, with Kad driving a tractor-trailer carrying the stash and Singh driving a second truck. Upon inspection of Kad's tractor-trailer, United States customs officials discovered the marijuana in vacuum-sealed packages hidden amid children's furniture. Rather than arrest Kad at the border, investigators chose to conduct surveillance of the truck. They concealed a GPS transmitter on it, and Kad was allowed to proceed without knowing that his illicit cargo had been discovered. Kad and Singh twice met up with Nguyen before the pair was arrested in Wisconsin and the load seized. Nguyen, who was identified in a traffic stop but not arrested, was finally indicted in November 2005 after Singh was convicted and agreed to cooperate.

At Nguyen's trial, Singh testified for the government that, while waiting for Kad to cross the border, he became concerned that customs officials had discovered the marijuana during their lengthy inspection of Kad's truck. Singh relayed his concerns to their boss in Canada, who told him to watch for surveillance and promised to arrange for Kad and Singh to receive new cell phones in case theirs were wire-tapped. Kad and Singh drove separately to a truck stop outside of Chicago, and Singh called their boss to let him know where they were. A couple hours after they arrived at the truck stop, Singh received a call from a man who said he was there to deliver the cell phones. Singh got into the man's car and retrieved the cell phones, which the man, whom Singh identified in court as Nguyen, told him how to use. Kad and Singh then proceeded on to Wisconsin.

Singh testified that he next saw Nguyen on December 3 in Menomonie, Wisconsin. Earlier that day, Kad had parked the truck and unhitched the trailer at a Menard's distribution center about 25 miles away in Eau Claire. There Singh had noticed a pair of vehicles exhibiting unusual traffic patterns suggestive of surveillance; he called the boss to let him know. According to Singh, the boss said that the buyers did not want to abandon the load without seeing for themselves whether it was under surveillance, and so Singh was instructed to go to a Wal-Mart parking lot in Menomonie and wait for the buyers to call. Singh testified that he went alone to Menomonie and was waiting in a Wal-Mart parking lot when Nguyen called him on his new cell phone and asked for his precise location. Soon after the call Nguyen arrived with another man, this time in a van Nguyen had rented in Chicago.

Nguyen and his partner followed Singh to a BP truck stop, where Singh left his truck and got inside the van. Singh remained in the van for a couple of hours. Nguyen said he wanted to be certain about the surveillance, so the three drove back to Kad's trailer in Eau Claire to conduct counter-surveillance. After some time, Nguyen recommended that Kad re-attach the trailer and drive onto the highway. Singh relayed the idea to Kad, who, after hooking up the trailer, informed Singh

that he had discovered an antenna on its rear bumper.  Singh testified that he and Nguyen then made multiple phone calls to their respective bosses, who ultimately instructed both of them not to move the trailer.  Nguyen and his partner then dropped Singh off at the BP truck stop in Menomonie.  A Wisconsin state trooper stopped Nguyen's van but let Nguyen proceed after identifying him.  Other law enforcement officials arrested Singh and Kad the next day, and seized the marijuana.

Four law-enforcement agents conducting surveillance from December 1 through December 3 testified about their observations of Singh and Nguyen, which were consistent with Singh's account.  But they could not confirm the content of any conversations between Singh and Nguyen, nor could they confirm that Nguyen gave Singh the cell phones.  Nonetheless, Shawn Gibson, a special agent with the Department of Homeland Security, testified that he interviewed Nguyen on October 4, 2005, at a Chicago police station.  Gibson said that when he asked Nguyen about his whereabouts on December 3, 2003, Nguyen volunteered that he had been working at a cell phone store in Chicago at the time, and said that a woman offered to pay him $1000 to deliver two cell phones.  Gibson said Nguyen told him that he gave the phones to an Indian man in Wisconsin.  Gibson also testified that Nguyen admitted that he drove the man around to ensure that they were not being followed, and said he knew that drugs were involved.

Nguyen told a different story at his trial.  He admitted, consistent with Singh's and the surveillance officers' testimony, that he met with Singh outside Chicago on December 1 and in Menomonie on December 3.  But Nguyen testified that he was just a small-time marijuana dealer who, on December 1, had heard from a friend that a shipment of high-grade marijuana had arrived from Canada.  Nguyen said that after multiple phone calls, he was put in touch with Singh, and that he drove to the truck stop outside Chicago to purchase ten pounds of marijuana for his own use.  Nguyen said that Singh told him he would have to unload some of the marijuana with other buyers before he could sell to him.  (Nguyen never explained why Singh would not have told him that on the phone before he drove to the truck stop.)

Although Nguyen admitted that he was working at a telephone store at the time, he testified that he did not give Singh any cell phones.  He admitted telling Gibson that he did give Singh the cell phones, but testified that he had lied because he thought that the cell-phone story, which he said Gibson introduced into the conversation, sounded better than admitting that he was trying to buy marijuana.

Nguyen testified that he and Singh arranged to reconvene in a couple days, and that he rented a van on December 2 in anticipation of that meet-up.  According to Nguyen, he and a friend drove to Wisconsin to meet with Singh in a Wal-Mart

parking lot after Singh called him on December 3. Nguyen confirmed Singh's testimony about driving around looking for police, and admitted that he helped conduct the counter-surveillance. He testified that he decided not to buy the marijuana and killed the deal after Kad discovered the transmitter.

After the defense rested and the jury was excused, the district judge and the attorneys reviewed the final jury instructions. The court's instruction on aiding and abetting reads:

> To find that the defendant aided or abetted a crime as charged in Count 1 or Count 2, you must find that the defendant knowingly associated with the criminal activity charged in the count that you are considering, that he participated in that criminal activity and that he tried to make that criminal activity succeed.

Nguyen requested that the district judge alter this instruction to model the Seventh Circuit pattern instruction, which reads: "Any person who knowingly [aids], [counsels], [commands], [induces] [or] [procures] the commission of an offense may be found guilty of that offense. That person must knowingly associate with the criminal activity, participate in the activity, and try to make it succeed." Seventh Cir. Pattern Crim. Jury Instruction 5.06 (1999) (brackets in original). Nguyen argued that, without the first sentence from the pattern instruction, the court's instruction was "misleading" and "gutted" the crux of the instruction.

Noting that Nguyen had not objected to the jury instructions during a pretrial conference with Magistrate Judge Crocker, the district judge found Nguyen's objection untimely. Nevertheless, the court reviewed its own instruction and concluded that it was appropriate as written.

The jury returned guilty verdicts on both counts, and the district judge sentenced Nguyen to concurrent terms of 80 months' imprisonment and five years' supervised release, as well as $200 in special assessments.

## Analysis

On appeal, Nguyen renews his contention that the aiding-and-abetting instruction misstates the law. He argues that the court's instruction misled the jury because it does not say—in language tracking 18 U.S.C. § 2 and the first sentence of the pattern instruction—that the government had to prove that he aided, counseled, commanded, induced, or procured the commission of the offenses charged in the indictment. And he asserts that, had the jury been instructed differently, he might have been acquitted based on his defense that he was acting entirely on his own behalf.

To establish the need for a new trial, Nguyen must show that the challenged instruction (1) incorrectly states the law and (2) prejudiced him because it likely confused or misled the jury. *United States v. Murphy*, 469 F.3d 1130, 1137 (7th Cir. 2006). We review *de novo* whether an instruction accurately states the law, *United States v. Van Sach*, 458 F.3d 694, 702 (7th Cir. 2006), and in making that determination we consider a judge's charge to the jury as a whole, *Murphy*, 469 F.3d at 1137.

Nguyen's argument fails at the first prong because the district court's instruction correctly states the law. To convict on an aiding-and-abetting theory, the government must prove that the defendant associated with the illegal activity, knowingly participated in it, and contributed toward its success. *See United States v. Irwin*, 149 F.3d 565, 569-70 (7th Cir. 1998); *United States v. Hubbard*, 22 F.3d 1410, 1416 (7th Cir. 1994). Here, the judge accurately instructed the jurors: the court told them that they had to find that Nguyen "knowingly associated with the criminal activity" charged in the respective counts, that he also "participated in that criminal activity," and that he "tried to make that criminal activity succeed." The court also explained that Nguyen's "presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish [his] guilt." These instructions are virtually identical to the instructions we approved in *Hubbard*, 22 F.3d at 1416, and *United States v. Scott*, 267 F.3d 729, 738-39 (7th Cir. 2001), and they clearly identify the act—participating in the charged criminal activity and not merely being present at the scene of the crime—that gives rise to criminal liability. And though we encourage courts to use the pattern jury instructions, the district judge was not required to read them verbatim. *See United States v. Burke*, 781 F.2d 1234, 1239 n.2 (7th Cir. 1985).

Moreover, Nguyen has not explained how the omission of the first sentence from the pattern instruction possibly could have misled or confused the jury. Nguyen's defense was not that he did not aid, counsel, command, induce, or procure the commission of an offense—he admitted that he conducted counter-surveillance, which, if done in furtherance of the criminal activity charged, suffices for aiding and abetting liability, *see United States v. Corral-Ibarra*, 25 F.3d 430, 436-37 (7th Cir. 1994). Rather, Nguyen wanted the jury to believe that he acted entirely on his own behalf and for his own criminal purposes. But in *Hubbard*, we said that instructing the jury that they had to find that the defendant "associated himself with the criminal venture, participated in it, and sought to make it succeed," as the court did here, "eliminated any possible misunderstanding" that the jury had to find that the defendant acted with the intent of furthering the charged criminal activity. 22 F.3d at 1416. Thus, since the district court's jury instructions clearly explained the law for the only disputed issue in Nguyen's trial, they did not prejudice him.

AFFIRMED.